## JOSEPH V. LUCAS *vs.* JOHN PITNEY.

1. Every corporation, unless restrained by its charter, has, as a necessary incident, the power of incurring debts in the course of its legitimate business, and of making and endorsing negotiable paper in payment of such debts.

2. The fifteenth section of the charter of the Camden and Atlantic Railroad Company was not designed as a limitation of the powers of the corporation, but as a grant of additional power.

3. A note given by a director of a railroad company, as a renewal of a similar note originally given as accommodation paper to raise money to pay the debts of the corporation, incurred in the course of its legitimate business, and transferred by the company in payment of a debt due, held valid, as against the maker.

The cause was heard upon the following special case, made at the Atlantic circuit before Justice Elmer, at April Term, 1857.

This was an action of *assumpsit*, brought by the holder against the maker of a promissory note, bearing date April 2d, 1855, for $1604.24, payable two years after date, with interest semi-annually, to the Camden and Atlantic Railroad Company, and endorsed, in the name of said company, by Robert Frazer, treasurer. The declaration contains two counts : the first, against the defendant, as maker of the promissory note, by the plaintiff, as endorser, and the second, a common count for money paid, had and received, interest, and on account stated.

VOL. III.                    O

Plea, *non-assumpsit* and issue.

The following is a copy of the note and endorsements :

"Philadelphia, April 2d, 1855.

$1604 24 ⎫    Two years after date, I promise to pay to
   48 13 ⎬  the order of the Camden and Atlantic Rail-
————— ⎰  road Company sixteen hundred and four
$1652 37 ⎭  .24 dollars, without defalcation, value re-
ceived.   Interest payable semi-annually.

(Signed)    J. PITNEY."

(Endorsed)

"The Camden and Atlantic Railroad Company,

By ROBERT FRAZER, *Treas.*

J. V. Lucas."

Plaintiff called, as a witness—

Robert Frazer, who testified as follows : I was treasurer of the Camden and Atlantic Railroad Company, and also secretary, in April, 1855, and have so continued to be ever since ; I am acquainted with the signature of the defendant—that to the note in question is his ; and the endorsement was made by me, as the treasurer of the company ; I was then, and am still, in the habit of endorsing the notes of the company, and this is the usual mode of my endorsement ; there was no resolution authorizing me to endorse notes, and I had no authority, except what the law would attach to my office ; that mode of making endorsements has been acknowledged by the company, and it was known to the board of directors that such a note as this was out.

Upon cross-examination, witness further said—There was no resolution then that the president should transact all the financial affairs of the company ; but there was such a resolution passed in June, 1855, when Mr. Richards came into the board, and was appointed president : the substance of the resolution was, that the president should have full power over the finances and in the management of the road ; before that the road had been managed by

Lucas v. Pitney.

an executive committee, and the president, Mr. De Costa, had attended to the finances; the resolution of 1855 gave the president the power of the executive committee, and added that over the finances, which had been previously managed by the board; but ordinary matters were not referred to the board—special ones were; I do not know that the board ever gave any direction about this particular note; every month lists of the notes were presented to the board, and this note was in those lists, as was, also, the notes out of which this note grew; the particular mode of endorsing notes was never acted on by the board; and I had no other power to endorse this note than what attached to my office and the facts that there was no disapprobation expressed by the board, and that similar endorsements had been approved and paid.

When Mr. De Costa accepted the presidency, the company was in want of funds, and he accepted it on condition that the directors would loan their notes to the company to raise money on; these terms were accepted, and he was made president, after which the several directors did give their notes to the company, and which were endorsed by the company, and money raised; this was the mode of raising money generally; sometimes, however, negotiations would be made for a particular amount, requiring the names of certain of the directors; in such cases, in order to equalize the liabilities of the several directors, those whose names were not required for that particular transaction would give the company their notes, to be negotiated in any way; this note arose from a transaction of that kind; on the 15th of August, 1854, Dr. Pitney (the defendant) gave his note, at four months, for $3546.59; this note was never negotiated; Mr. De Costa took it for the purpose, but did not do so; when it came due, December 18th, 1854, it was renewed by two notes, one of which was for $1604.26, and as we were then indebted to him, he took this note as collateral for what the company owed him; this note was renewed several times

afterwards as it came due, still remaining as a collateral with Mr. De Costa, until the last renewal; the note in question was made varying two cents in amount, by a clerical error; and upon this last note being made, Mr. De Costa took it for its amount in payment of what the company owed him; I think this was after he ceased to be president; but the note was antedated to correspond with similar notes which had been extended.

The original note of $3546.59 was originally given as an accommodation to raise money for the general purposes of the road; the notes, the antecedents of the one in question, were never negotiated, but held as collateral; I do not think this particular note ever came up before the board, but was an arrangement between Mr. De Costa and the doctor; I speak from having heard the two converse together, and from having received interest on this note, and paid it to Mr. De Costa; but it was a clear understanding as to all these notes that the company would pay them; sometimes bonds were given as collateral. [Witness being shown a letter, and said letter being read, says]—I am not aware of such understanding as to all the other notes given by him; I know of no such arrangement in regard to this particular note or its antecedents; no bonds were ever given as collateral for this note or its antecedents; the largest amount of such notes was secured by collaterals, but not the largest number of notes; there were bonds given to secure some of Dr. Pitney's notes, but of very few—none of them are so secured now. [The witness here produced the note book of the company, which was read, *pro ut* the same.]

And the said witness, being again examined, said— During all this time Dr. Pitney was one of the directors of the company; he paid me the interest semi-annually, to April 5th, 1857; in May, 1855, Mr. De Costa resigned, and Mr. G. W. Richards was elected a director, under a power in the board to fill vacancies; and on the fourth Tuesday of June following, Mr. Richards was elected a

Lucas v. Pitney.

director by the stockholders, and on the same day the board elected him president. On the 25th of August, 1855, Mr. De Costa was charged with this note, it having been (within a few days of that time) previously made and antedated.

The other note of $1942.33, which went to make up the original note of $3546.59, was negotiated, and found its way into Pennsylvania Bank, where I believe it is yet unpaid.

And said witness, being again cross-examined, further said: I think Dr. Pitney was consulted about this note being passed over to Mr. De Costa; it was antedated to correspond with the other notes, which had been extended for two years, and which bore date April 2d, 1855. [Two letters of Mr. De Costa were here admitted and read, *pro ut* the same.]

The note in question, with the endorsement thereon, was read in evidence, and both parties rested.

The jury, without argument, and without leaving the box, rendered a verdict for the plaintiff for $1661.80, subject to the opinion of the Supreme Court at bar. If the court should be of opinion that upon the evidence, the plaintiff ought to recover, then judgment to be entered on the verdict for the plaintiff for that amount, with costs; if not, the judgment to be for defendant, with costs.

Argued at June Term, 1858, before the CHIEF JUSTICE, and Justices OGDEN, HAINES and RYERSON.

*W. L. Dayton,* for the plaintiff.

*Browning* and *Vroom,* for the defendant.

The opinion of the court was delivered by

The CHIEF JUSTICE. This action was brought to recover the amount due upon a promissory note made by the defendant, payable to the order of the Camden and Atlantic

Railroad Company, and by them endorsed. Upon the trial a verdict was taken for the plaintiff, subject to the opinion of this court upon the case made by the evidence. The drawing of the note by the defendant, and its endorsement by the payees, are not called in question. The only point submitted for the consideration of the court is, whether the Camden and Atlantic Railroad Company, to whom the note was made payable, and by whom it was, endorsed, have power to receive or to transfer commercial paper.

The note in question was given as a renewal of another note, originally given by the defendant, by way of accommodation to the company, to enable them to raise money to meet its liabilities. The original note was not negotiated, but was deposited with De Costa, the president of the company, as collateral, to secure the payment of certain debts due to him from the company. After several renewals, the. note in question, with the knowledge of the defendant, was transferred to De Costa, after he had ceased to be president or director of the company, in payment of a part of the indebtedness of the company to him.

The charter of the Camden and Atlantic Railroad Company confers upon them the ordinary powers of a railroad company. By the 15th section, it is enacted, "that the said corporation shall have power to borrow such sum or sums of money, from time to time, as shall be necessary to build, construct or repair said road, and furnish the said corporation with all the necessary engines and machinery for the uses and objects of the said company, and to secure the payment thereof by bond or mortgage, or otherwise, on the said road, lands, privileges, franchises and appurtenances of or belonging to said corporation, at a rate of interest not exceeding seven per centum per annum; provided that it shall not be lawful for the said company to plead any statute or statutes of this state against usury in any suit in law or equity instituted to

enforce the payment of any bond or mortgage executed under this section."

This section, it is insisted on the part of the defendant, is a limitation of the power of the company to borrow money for specified purposes and in the mode designated, and that it is tantamount to a prohibition of the company's borrowing money for any other purpose or upon any other security than that specified.

It is clear, however, that the 15th section of the charter was designed not as a limitation or restriction of the powers of the corporation, but as a grant of additional power. It authorizes the company to borrow such sums of money as shall from time to time be necessary for the construction, repair, and equipment of the road, and to secure the repayment thereof by bond, mortgage, or other security on the road and franchises of the corporation, at a rate of interest exceeding the rate established by law. The corporation are clothed with powers which, independent of that provision, they could not have exercised. But there is nothing in the provision which, by necessary implication or by fair intendment, can be construed to limit the general powers and capacities incident to every corporation. The question, therefore, of the power of the corporation to give or endorse the note in question must be decided in view of the inherent powers of the corporation, irrespective of the special provision contained in the section alluded to.

On the part of the defendant, it is insisted that a corporation can make no contract which is not necessary to enable it to answer the object of its incorporation; that the loaning of money, or the borrowing of notes to be discounted in market, is not necessary to the operation of a railroad company; and that, consequently, the making or endorsement of commercial paper by such company, as a security for money loaned and the endorsement of notes borrowed for the purpose of raising money, are void acts.

The simple inquiry is, whether a railroad company has, as a necessary incident, the inherent power of borrowing money for the payment of its debts or for its necessary purposes. It is conceded that the corporation has such powers only as are expressly conferred by charter or necessarily incident to those powers. If it may lawfully contract debts, it would seem clear that it may enter into obligations to pay those debts, or borrow money for that purpose.

The power of incurring debts in the course of its legitimate business, of giving notes, or borrowing money for the payment of such debts, would seem necessarily incident to every corporation whose business involved the expenditure of large sums of money, and often upon sudden and unforeseen contingencies. Such, it is believed, is the universal custom of all important corporations, whether private or municipal. The authorities in support of the practice are abundant.

Our statute recognizes bodies politic or corporate as persons by whom promissory notes and bills of exchange may be drawn, endorsed, and accepted. *Nig. Dig.* 667, § 4. The technical doctrine, that a corporation can contract only under its corporate seal, was long since exploded.

In *Munn* v. *The Commission Co.*, 15 *Johns. R.* 44, it was held that a corporation of limited powers might engage to pay or advance money at a future day by the acceptance of a bill of exchange.

In *Mott* v. *Hicks*, 1 *Cowen* 513, it was held that a private corporation might give a negotiable promissory note for a debt incurred in its ordinary business.

In *Kelley* v. *Mayor of Brooklyn*, 4 *Hill* 263, it was held that a municipal corporation may issue negotiable paper for a debt contracted in the course of its proper business; and in delivering the opinion of the court, Cowen, J., said, independently of any statute provision, a corporation may issue negotiable paper for a debt contracted in the course of its proper business. This is a power incident

Lucas v. Pitney.

to all corporations, and no provision in its charter, or elsewhere, merely directing a certain form in affirmative words should be so construed as to take away the power.

The same general principle will be found in *Moss* v. *Oakley*, 2 *Hill* 265; *Barker* v. *The Mechanic Ins. Co.*, 3 *Wend.* 96; *Furniss* v. *Gilchrist*, 1 *Sandf. Sup. Ct. R.* 53; *Angell and Ames on Corp.*, § 257; *Pierce on Railroads* 372.

The result of the authorities, to adopt the language of a recent writer, seems to be, that corporations carrying on business under no restraining act may make promissory notes and draw bills of exchange, where these are the usual and proper means to accomplish the purposes of their organization; that such notes and bills are to be presumed legal and valid where they are not prohibited by law and are received in good faith, and that they are invalid when given in violation of law, or when given for purposes wholly foreign to those for which the corporation was created. *Edwards on Bills* 77.

The note in question was given as a renewal of accommodation paper originally given by the defendant, being one of the directors of the company, to raise money to pay the debts of the corporation. It was subsequently transferred by the company to one of its creditors, in payment of a debt due, with the knowledge and assent of the defendant. There is no pretence in the evidence, either that the indebtedness of the company, which the paper of the defendant was originally designed to satisfy, or for the payment of which the note in question was eventually transferred by the company, was not incurred in the course of its regular and lawful business.

We are of opinion, therefore, that the railroad company were authorized to hold and transfer the note in question, and that consequently the plaintiff is entitled to judgment upon the verdict.

This conclusion renders it unnecessary to express any opinion upon the other point discussed by counsel upon

the argument, viz., whether the objection, if valid, can be taken advantage of by this defendant.

The plaintiff is entitled to judgment.

CITED *in Montague* v. *Church School Dist.*, 5 *Vr.* 219 ; *Hackettstown* v. *Swackhammer,* 8 *Vr.* 191.